SO ORDERED: March 23, 2011.



_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JOHN DOAN WITTE | )   CASE NO. 10-12229-AJM-13 |
| | ) |
| Debtor | ) |

**ORDER DENYING DEBTOR'S MOTION TO STRIP UNDERSECURED JUNIOR MORTGAGE OF FIRST MERCHANTS BANK, N.A.**

*Background*

The Debtor filed this chapter 13 case on August 12, 2010 (the "Petition Date") and as of the Petition Date, resided at 15325 Allisonville Road, Noblesville, Indiana (the "Residence").  The Debtor scheduled Bank of America ("BOA") and First Merchants Bank, N.A. ("First Merchants") as the holders of the first and second mortgages on the Residence, with respective claims of $215,000 and $70,668.   The Debtor valued the Residence at $195,000.  The Debtor's chapter 13 plan provided that the Debtor would

1

file a motion to strip off First Merchants' junior mortgage.[1] That motion was filed on August 23, 2010 (the "Motion") to which First Merchants objected on the basis that the Debtor "grossly undervalued" the Residence. Hearing on the Debtor's Motion and First Merchants objection was held on March 14, 2011 wherein the Debtor appeared by counsel Penny Carey and First Merchants appeared by counsel E. Phillip Gregg. For the reasons stated below, the Court SUSTAINS First Merchants' objection and DENIES the Debtor's Motion.

## *Discussion*

### *Strip Off of Wholly Unsecured Mortgage under Bankruptcy Code §506(d)*

A chapter 13 plan may "modify" the rights of holders of secured claims under 11 U.S.C. §1322(b)(2), but the plan cannot be confirmed unless it provides that the amount to be distributed to the secured creditor is not less than the "allowed" amount of such claim under 11 U.S.C. §1325(a)(5)(B)(ii). The "allowed" amount of such claim is determined by application of the provisions of 11 U.S.C. §506(a) wherein "a claim is secured only to the extent of the value of the property on which the lien is fixed; the remained of that claim is considered unsecured" *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 238-39, 109 S.Ct. 1026, 103 L. Ed. 2d, 290 (1989).

Although §506(a) allows bifurcation of claims into their secured and unsecured parts, claims which are secured only by a mortgage in the debtor's principal residence cannot be bifurcated under the "antimodification" provisions of 11 U.S.C. §1322(b)(2).

---

[1] Strip off of a wholly unsecured mortgage is permissible by motion in this district. But see, *In re Stewart*, 408 B.R. 215 (Bankr. N. D. Ind. 2009) (strip off of wholly unsecured mortgage must be sought by adversary proceeding).

2

*Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L. Ed.2d 228 (1993). However, *Nobelman* considered only whether the senior mortgage on a debtor's residence could be "stripped down" to its fair market value under 11 U.S.C. §506(a). It did not address whether a wholly unsecured junior mortgage could be "stripped off" completely and rendered entirely unsecured. Since *Nobelman*, a majority of the courts addressing the "strip off" issue have found that the antimodification provisions of §1322(b)(2) do not prevent a "strip off" of a wholly unsecured junior mortgage. See, *In re Tanner*, 217 F.3d 1357 (11th Cir. 2000); see also, *First Bank, Inc. v. Van Wie, (In re Van Wie)*, 2003 WL 1563959 (S. D. Ind.) at *3 and cases cited therein.

There appears to be no dispute that: (1) both BOA's and First Merchants' mortgages are valid; (2) BOA's mortgage is prior and senior to First Merchants', and (3) First Merchants' claim is secured only by its mortgage in the Residence. The only issue is whether the value of the Residence exceeds the amount of BOA's claim such that there is at least some value to support any part of First Merchants' claim, in which case First Merchants' junior mortgage is not wholly unsecured and therefore cannot be stripped off. Thus, the Court must make a judicial valuation of the Residence under §506(a).

### *Valuation of the Residence under §506(a)*

Courts determine the value of real property using fair market value principles. See, *Profitt v. Mendoza*, 2004 WL 3223059 (S. D. Ind.) at *2. The three universally recognized approaches using fair market value principles are (1) the market or sales comparison approach, based on evidence of comparable sales; (2) the cost or land

3

development approach, based on actual costs of construction, reduced for depreciation; and (3) the capitalization of income approach, which capitalizes the net future income that the property is capable of producing.  *Id*.  See also, *In re Zersen*, 189 B.R. 732, 738-39 (Bankr. W. D. Wis. 1995).  Both the Debtor and First Merchants offered expert testimony using the sales comparison approach.

### *The Debtor's Expert*

The Residence is a three bedroom, two bath, 2,293 square foot brick ranch style home built in 1970.  It has an above-ground pool, a partially finished basement and a pole barn. [2]  The Residence is in fair condition and is located in Noblesville, Indiana, a suburb northeast of Indianapolis.  It sits on 6.7 acres of land of which 3 to 4 acres consists of a "valley" of water and forest.  The areas to each side of the Residence are developed with subdivisions but the area across the street is not.  The Residence is located between three and four miles from the popular Conner Prairie historical village and music venue.

The Debtor testified that there had been water damage to the master bathroom and a hallway bath. Pictures taken by the Debtor in October 2010 and admitted into evidence showed water damage on drywall and broken tile in the master bath as well as ceiling water stains and a vanity that had fallen apart due to water damage to the hallway bath.  The pictures also showed holes in the gutter above a bay window and a leaking roofline with water damage to the window frame.  There were also pictures of a boiler that needed to be replaced, at an estimated cost of $6,235.00.  The Debtor also

---

[2] The Debtor's appraisal says the Residence has a 2-car garage and First Merchants' appraisal says it has a 4-car garage.  This discrepancy may be attributable to counting the pole barn as a garage.

4

testified that the water leakage had been occurring for the last two years and that the ceiling under the water- affected areas had fallen through to the basement and had been or was in the process of being repaired.

The Debtor's appraiser, Nathan Schreck, appraised the Residence on March 8, 2011. His written appraisal was introduced and admitted into evidence as Debtor's Exhibit 16. He used comparable sales of 5 homes, all located less than seven (7) miles from the Residence, to arrive at this opinion that the fair market value of the Residence was $210,000. The five comparable sales are summarized as follows:

| Comparable | Address of comparable property | Sales price | Adjustments |
| --- | --- | --- | --- |
| 1 | 11841 211th Street Noblesville | $215,000 after adjustment: $206,420 | Net adjustment:($8580) comp has less square footage, unfinished basement, but in better condition and has inground pool |
| 2 | 15415 E. 146th Street Noblesville | $186,000 after adjustment: $213,210 | Net adjustment: $27,210 comp has less square footage, no basement, and an inferior barn; it however has a 5-car detached garage |
| 3 | 11801 River Rd. Carmel, Indiana | $256,000 after adjustment: $217,930 | Net adjustment: ($38,070) comp has no basement but has 4 bedrooms and 3 baths and is on 13.62 acres and has a superior barn |
| 4 | 10566 E. 206th St. Noblesville | $293,900 after adjustment: $215,980 | Net adjustment: ($77,920) comp has no basement, no barn, sits on 7.7 acres and is in good condition |
| 5 | 7502 E. 196th St. Noblesville | $300,000 after adjustment: $222,615 | Net adjustment: ($77,385) comp has more square footage, 8.22 acres and woods, and is in good condition |

The largest adjustments made by Schreck were to the fourth and fifth comparables. Each of those "comps" had a net downward adjustment of over $77,000. Comparables

#4 and #5 were in "good" condition, compared to the Residence, which was in "fair" condition, for which Schreck made a downward adjustment of $70,000 (comp #4) and $40,000 (comp #5). Comparable #1 likewise was in "good" condition, but Schrenk's downward adjustment for that comp due to the condition of the house was only $25,000.

Furthermore, Schreck adjusted the comparables $7000 per acre, due to what he termed was the "limited" use of the Residence's acreage.  Comps #3, 4 and 5 were adjusted downward in the respective amounts of $35,000, $30,450 and $31,500 due to the amount and apparently expanded use of the acreage surrounding those properties.

### *First Merchants' Expert*

First Merchants' appraiser, Gregory Spudic, appraised the Residence on March 10, 2011.  His written appraisal was introduced and admitted into evidence as Creditor's Exhibit A.  He used comparable sales of 6 homes, all located less than 7-1/2 miles from the Residence, to arrive at this opinion that the fair market value of the Residence was $275,000.  The six comparable sales are summarized as follows:

| Comparable | Address of comparable property | Sales price | Adjustments |
|---|---|---|---|
| 1 | 14557 E. 146th Street Noblesville | $202,000 after adjustment: $240,050 | Net adjustment: $38,050 comp has at least 1.5 fewer acres;  less square footage, smaller and unfinished basement, only two car garage; |
| 2 | 15424 E. 146th Street Noblesville | $235,000 after adjustment: $252,525 | Net adjustment: $17,525 comp in "above average" condition, compared to Residence in "average" condition; comp has at least 2.5 fewer acres; two car garage |

6

| 3 | 7502 E. 196th Street Noblesville (same as Debtor's comp #5) | $300,000 after adjustment: $267,800 | Net adjustment:($32,200) comp has slightly more acreage; is in above average condition and has more square footage but only a 2 car garage |
|---|---|---|---|
| 4 | 11801 Florida Rd. Fortville | $240,000 after adjustment: $265,175 | Net adjustment: $25,175 comp has more square footage but less acreage and only a 2 car garage |
| 5 | 19730 Allisonville Rd. Noblesville | $236,250 after adjustment: $288,600 | Net adjustment: $52,350 Residence has much more acreage (5.7 acres); but comp has asphalt drive |
| 6 | 19725 Allisonville Rd. Noblesville | $177,000 after adjustment: $249,925 | Net adjustment: $72,925 Residence has at least 5.7 more acres than comp and an asphalt drive |

Spudic adjusted the comparables $10,000 an acre.  Spudic testified that the Residence was unique in that it was located on a premium suburban, non-rural lot.  He also testified that most of the acreage was not in a flood plane and that it was good, "buildable" land that could be divided up into two to five lots.  He also testified that the Residence had good "green space" with trees that provided privacy from neighboring structures.   Spudic further testified that the Residence backed up to the Wellington Estates subdivision, where lots between a third to half an acre were valued at $100,000.  He did add that he did not inspect the interior of the Residence, but that, even with the water damage to the hallway bath, the master bath and the bay window, any reasonable downward adjustment would not exceed $25,000.  Thus, Spudic concluded that these adjustments still resulted in the Residence being worth no less than $250,000.

The Court finds that First Merchants' expert is more credible because it finds that the Debtor's expert's adjustments made to the comparables based on the condition of

7

the property are inconsistent.  Both appraisals list the Residence in "fair" or "average" condition.  However, Debtor's comparable #4 was in  "good" condition, for which Schreck downwardly adjusted that comparable by $70,000, yet Debtor's comparable #1, also in "good" condition, was downwardly adjusted only by $25,000.  The only comparable that both appraisers used was located at 7502 East 196th Street, Noblesville (Debtor's comp #5, First Merchants' comp #3) which both appraisers listed as in "good" or "above average" condition.  Based on the condition if this property compared to the Residence, the Debtor's appraisal downwardly adjusted this property by $40,000 but First Merchants' appraisal downwardly adjusted this property by only $5000.  Spudic testified that, in this opinion, the $40,000 downward adjustment on this comparable property was "hard to rationalize".

    The Court also finds that the adjustments Schreck made to the comparables based on acreage were neither consistent nor credible.  Despite the fact that the Residence had more acreage (6.7 acres) than Debtor's comparable #1 (4 acres) and comparable #2 (3.34 acres), Schreck made no upward adjustments to those comparables to account for the Residence's greater acreage.  Yet, Schreck made sizeable downward adjustments when comparing properties with larger acreage than the Residence, as demonstrated by comparable #3 (13.62 acres, with a downward adjustment of $35,000), comparable #4 (7.7 acres, only one acre larger than the Residence, with a downward adjustment of $30,450) and comparable #5 (8.22 acres, only one and a half acres larger than the Residence, with a downward adjustment of $31,500).

    The sizeable discrepancy between the adjustments of the two appraisers was

due to their markedly divergent views of the value of the acreage surrounding the Residence.  Both appraisals indicated that the Residence was not in a flood plane.  Schreck surmised that no more than half the acreage surrounding the Residence was usable, and that the Residence's value was negatively affected by significant standing water on half of the property that had accumulated due to recent storms.  However, Schreck also testified that the flooding occurred on the areas close to the White River, and the Court notes that standing water was prevalent in many yards due to the major storm that had occurred about the time Schreck conducted his appraisal.  First Merchants' s appraisal viewed the acreage as having greater utility.  Spudic noted that the acreage could be subdivided into lots or would appeal to a buyer wishing to build a large home in an urban area while maintaining a high degree of privacy from surrounding homes.

Schreck's assumption that half of the acreage was unusable is not credible in the opinion of the Court.  If the appraisal had been for farmland, and only half of it was tillable, this fact would certainly have a negative impact upon its value.  But, as Spudic testified, the current use of the property was for residential purposes and the areas adjacent to the Residence were likewise zoned residential.   The Residence is situated on a 6.7 residential acre lot which allows for a buffer from the surrounding property, and thus, has value.  Therefore, the Court finds that Schreck's adjustments and assumptions are not credible and that the Debtor's appraisal does not accurately reflect the true value of the Residence.

Thus, the Court finds that First Merchants' appraisal provides the better evidence the Residence's value.  Although that appraisal valued the Residence at $275,000,

9

Spudic did testify that a downward adjustment of $15,000 to $25,000 would be appropriate due to the water damage. Accordingly, the Court finds that the Residence is worth no less than $250,000.

The Debtor testified that BOA was owed $217,000. At the conclusion of the hearing, Debtor's counsel stated that BOA was owed $216,000. BOA's servicing agent, the Bank of New York Mellon c/o BAC Home Loans Servicing L.P. f/k/a Countrywide Home Loans Servicing, L. P., filed a proof of claim in the amount of $216,599.80. In any event, the Residence is worth more than the amount of BOA's secured claim and therefore there is equity in the Residence. Because there is some value to support First Merchants' junior mortgage, First Merchants' objection is SUSTAINED and the Debtor's motion to strip First Merchants' junior mortgage is DENIED. [3]

# # #

Distribution:

Penny Carey, Attorney for the Debtor
E. Phillip Gregg, Attorney for First Merchants
Robert Brothers, Chapter 13 Trustee

---

[3] First Merchants objected to confirmation of the Debtor's chapter 13 plan because it failed to provide for First Merchants' secured claim. That objection was also heard on March 14th. Determination of that matter, like the Debtor's motion here, turns on the valuation of the Residence. Because the Residence has been found to have a value exceeding the amount of the first mortgage, the Court, by separate order, will sustain First Merchants' objection and will order the Debtor to file an amended plan within 28 days.